NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0886n.06
Filed: November 7, 2005

No. 04-3157

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NIBAL NASHAT SHAKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GILMAN and COOK, Circuit Judges; MILLS, District Judge.*

PER CURIAM. Petitioner Nibal Nashat Shaker, an Iraqi citizen, seeks review of the Board of Immigration Appeals's final order of removal. Because substantial evidence supports the BIA's decision, we deny the petition for review.

I

Shaker, a Chaldean Christian, entered the United States in 2001 as the fiancée of a United States citizen. The engagement fell through and, after the expiration of her visa, the INS initiated proceedings to remove Shaker from the country. Shaker conceded removability before an Immigration Judge, but sought asylum, withholding of removal, and protection under the

---

*The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

Convention Against Torture. She testified to alleged abuses and hardships she suffered in Iraq because of her religion and her refusal to join the Baath Party. Her mother and sister also testified.

The IJ denied Shaker's application, finding her testimony not credible. The BIA affirmed the IJ's decision in a short opinion adopting the IJ's reasoning. Shaker then petitioned this court for review, challenging the BIA's credibility determination and urging the court to "take administrative notice of the changed country conditions in Iraq."

II

A. The Credibility Finding

Shaker first challenges the BIA's adverse credibility determination. Because the BIA's opinion adopted the IJ's reasoning in this respect, we review the IJ's decision. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). We disturb the decision only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). An adverse credibility determination may arise from omissions and inconsistencies in a petitioner's testimony and application. *See Djeljevic v. Gonzales*, 124 Fed. Appx. 965, 970 (6th Cir. 2005). Here, the IJ based his credibility finding on inconsistencies among Shaker's testimony, her application, and her mother's testimony.

First, the IJ pointed to Shaker's testimony that her father was arrested, held for two weeks, tortured, and then died while in the custody of the Iraqi government. Shaker omitted this incident

in her response to the following application question: "Have you or any member of your family ever been accused, charged, arrested, detained, interrogated, convicted, sentenced, imprisoned in your country or any other county . . . ?" When the IJ asked why Shaker failed to recount this incident in her application, her attorney answered: "[S]he thought the asylum application dealt just with her, irrespective of what the question you just cited obviously calls for." "The IJ was not obliged to accept this rather implausible explanation" in the face of the plain meaning of the question. *Shllaku v. Gonzales*, 139 Fed. Appx. 700, 701 (6th Cir. 2005). We cannot say that any reasonable adjudicator would be compelled to reach a contrary conclusion. *See Yu*, 364 F.3d at 702.

The IJ also addressed another discrepancy between Shaker's application and her testimony. In her personal statement supporting her application, Shaker described walking around a shopping center with friends when Uday Hussein "and his crew" began to follow them. She concluded: "And we were scared of them [and] we start[ed] running and hiding from them." When she testified, however, she added that Uday caught one of her friends, detaining her for two days. When her friend returned, she refused to talk about what had happened. The IJ concluded that "[i]f such a thing happened, . . . those matters would have been mentioned in the application." Substantial omissions, such as this one, support an adverse credibility finding. *See Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005).

Finally, the IJ discussed inconsistencies between Shaker's testimony and her mother's. Shaker testified Uday Hussein arrived at a party that Shaker and her mother attended, and, in fear of being kidnapped, Shaker and her mother sneaked past the guards, leaving Hussein at the party.

Shaker's mother, on the other hand, testified Hussein stayed only a short time at the party, and she and Shaker were still there when he left. Though seemingly insignificant on its own, this inconsistency paired with the others forecloses our disturbing the IJ's findings, given our highly deferential standard of review.

These inconsistencies provide substantial evidence of Shaker's incredibility and thus her ineligibility for asylum, withholding of removal, or CAT protection. Shaker identifies nothing in the record that compels a contrary conclusion.

### B. Shaker's Other Challenges

Shaker asks this court to "take administrative notice of changed country conditions in Iraq," arguing that Iraqi Christians now face increased persecution. This court may not take judicial notice of changed country conditions where the record does not support it. *Jebraail v. Ashcroft*, 119 Fed. Appx. 759, 764 (6th Cir. 2005); *Visha v. INS*, 51 Fed. Appx. 547, 551 (6th Cir. 2002).

Shaker's remaining challenges lack merit. Contrary to her assertion, the BIA afforded her case its due individual attention. *See Vasha v. Gonzales*, 410 F.3d 863, 876 & n.6 (6th Cir. 2005) (upholding single-member review by BIA and BIA streamlining procedures). Also contrary to Shaker's assertion, the IJ considered—indeed, discussed—the testimony of Shaker's mother and sister.

III

Because substantial evidence supports the IJ's credibility determination, and because Shaker

cannot prevail on her remaining arguments, we deny Shaker's petition for review.